374 So.2d 575 (1979)
AIR JAMAICA, LTD., and Taca International Airlines, S.A., Appellants,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Appellee.
Nos. 78-2280, 78-2300.
District Court of Appeal of Florida, Third District.
August 7, 1979.
Rehearing Denied September 10, 1979.
*576 Marlow, Shofi, Ortmayer, Smith, Connell & Valerius and Thomas F. Valerius, Morton H. Silver, Miami, for appellants.
Jim Smith, Atty. Gen. and E. Wilson Crump, III, Asst. Atty. Gen., Tallahassee, for appellee.
Before PEARSON, HUBBART and SCHWARTZ, JJ.
PEARSON, Judge.
These consolidated appeals are brought by taxpayers Air Jamaica, Ltd., and Taca International Airlines, S.A., (the Airlines) from a decision of the Department of Revenue (the Department) sustaining a finding that the Airlines were liable for uncollected sales tax on packaged meals purchased by the Airlines and served to their passengers on flights to foreign countries. The assessment is pursuant to Section 212.01 et seq., Florida Statutes (1977). We affirm the finding of the Department that the packaged meals purchased in the State of Florida are subject to the sales tax.
After notification of the proposed assessment, a hearing on the cause was held before a hearing officer of the Department of Administrative Hearings. This officer entered his recommended order finding that the meals were purchased for consumption outside the State of Florida and were not subject to the state tax. He recommended that the assessment be dismissed. The Attorney General's office filed exceptions to the hearing officer's recommended order. The Department of Administrative Hearings accepted the hearing officer's findings of fact but concluded that, as a matter of law, the assessment was valid and should be sustained. Thereafter, the Governor and the Cabinet, sitting as the Department of Revenue, accepted the order of the Department of Administrative Hearings instead of the recommended order of the hearing officer. This appeal is from that order.
The essential facts in this matter have been set out by the hearing officer and, inasmuch as they have been accepted by the Department, we accept these findings as the basis for the order appealed. They are as follows:
"During the three year period from October 1, 1974 through September 30, 1977 Air Jamaica purchased prepared meals from Jerry's Caterers at Miami (Jerry's) in the total amount of $740,760.04 and Taca purchased prepared meals from Jerry's in the total amount of $161,379.72.
"Sales tax, penalty and interest through March 20, 1978 were assessed against Air Jamaica in the amount of $35,291.54 on the total paid for meals from Jerry's.
"Sales tax plus interest through November 20, 1977 were assessed against Taca in the amount of $9,359.86 on the total paid for meals from Jerry's. These figures are accepted as accurately representing 4% of the cost of meals purchased plus interest and penalties.
"The operations with respect to the meals were identical for both Air Jamaica and Taca. Prepared meals were delivered to the aircraft by Jerry's in trays holding 25 meals. These trays are supplied with heating elements and act as ovens in which the meals are heated. When placed aboard the aircraft by Jerry's employees the trays holding meals *577 intended to be served hot are plugged into electrical outlets on the plane. Prepared food delivered to the aircraft by Jerry's intended to be served cold obviously are not plugged into the electrical outlets.
"Air Jamaica departs from Miami and serves only Montego Bay and Jamaica. Taca departs from Miami and serves the cities of Belize, El Salvador, Nicaragua and Panama.
"Some 30 to 50 minutes after leaving Miami each company serves a meal for which no separate charge is made to the passenger. At the time these meals are served the aircraft is well outside the boundaries of Florida and either over Cuba or international waters.
"Although no separate charge is made for the meal served the cost of the meal, like every other operational and administrative cost, is considered in arriving at the air fare charged to the passenger for the transportation from Miami to destination.
"Jerry's bills the airlines for the number of meals delivered at a wholesale price of $3.48 per meal for meals served to first class passengers and $2.19 for meals served to economy passengers. Each airline provided Jerry's with tax resale certificates which relieved Jerry's from the collection of sales tax on meals delivered to the aircraft."
Based upon these facts, the hearing officer recommended that the assessment be dismissed because it was his conclusion that Section 212.07(2), Florida Statutes (1977), violated the supremacy clause of the United States Constitution if applied to tickets sold to passengers in interstate or foreign commerce in that it would violate 49 U.S.C.A. 1513 (West 1976), which provides in pertinent part:
"(a) No State (or political subdivision thereof . ..) shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom; except that any State (or political subdivision ...) which levied a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom prior to May 21, 1970, shall be exempt from the provisions of this subsection until December 31, 1973.
"(b) Nothing in this section shall prohibit a State... from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and nothing in this section shall prohibit a State ... owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities."
He further held that the assessment of the tax would be in derogation of Section 212.06(5)(a), Florida Statutes (1977), which states that Chapter 212 is not intended to levy a tax on exports delivered "to a common carrier for shipment outside the state."
The Department in accepting the findings of fact of the hearing officer and declining to follow his legal conclusions reached the decision that the assessment did not violate the supremacy clause and that the sale of packaged meals to the Airlines did not constitute an export of the meals.
The position of the two appellant Airlines is identical on this appeal, and a decision for one would necessarily include a decision for the other. It is first argued that the Department's order violates Article I, Section 10, of the United States Constitution because the meals are purchased for export and, therefore, exempt from state sales tax. We think that this position cannot be successfully maintained in the light of the fact that the meals are consumed on board before reaching a foreign country. The United States Supreme Court, in determining the nature of goods shipped as to *578 whether they were exports, has held that the term "export" includes the necessity of delivery to another country. See Swan & Finch Company v. United States, 190 U.S. 143, 23 S.Ct. 702, 47 L.Ed. 984 (1903). This rationale has been followed by other courts dealing with the exemption of goods from taxation. See Shell Oil Company v. State Board of Equalization, 64 Cal.2d 713, 51 Cal. Rptr. 524, 414 P.2d 820 (1936); and Collector of Revenue v. J.L. Richardson Company, 247 So.2d 151 (La. App. 4th Cir.1971). We hold, therefore, that the Department correctly determined that the sale of the packaged meals to the Airlines in the State of Florida was not exempt as an export of the meals.
The Airlines, both of which are foreign carriers, next urge that the Department's order conflicts with 49 U.S.C.A. 1513 (West 1976). This statute, which has already been quoted, is not applicable because Section (b) thereof clearly exempts state sales taxes from its provisions.
The Airlines next urge that the Department's order is contrary to Florida Statutes, and particularly the sales tax chapter, because the packaged meals are purchased in Florida for resale and are resold outside of the state. They draw our attention to Section 212.06, Florida Statutes (1977), which provides in pertinent part:
"(1)(a) The aforesaid tax at the rate of four per cent of the retail sales price as of the moment of sale, four per cent of the cost price as of the moment of purchase, or four per cent of the cost price as of the moment of commingling with the general mass of property in this state, as the case may be, shall be collectible from all dealers as herein defined on the sale at retail, the use, the consumption, the distribution and the storage for use or consumption in the state, of tangible personal property.
* * * * * *
"(2)(c) The term `dealer' is further defined to mean every person, as used in this chapter, who sells at retail, or who offers for sale at retail, or who has in his possession for sale at retail, or for use, or consumption, or distribution, or storage to be used or consumed in this state, tangible personal property as defined herein.
* * * * * *
"(3) Every dealer making sales, whether within or outside the state, of tangible personal property, for distribution, storage, or use or other consumption, in this state, shall at the time of making sales, collect the tax imposed by this chapter from the purchaser."
In support of this argument, the foreign carriers urge that
"[t]he testimony of appellant's regional manager was that the cost of the meals is included in the price of the ticket. Clearly the meal is being sold to the passenger, payment for which is incorporated in the price of the carriage. As this indicates that the meal is not gratuitous but paid for by a passenger, it must follow that the transaction between appellant and the caterer is not a retail sale. Further, the fact that if a passenger fails to receive a meal, he is entitled to a refund is indicative that the passenger is buying a meal. Accordingly, if the passenger is buying a meal from appellant the purchase of that same meal from the caterer cannot be deemed a retail sale."
In our view this argument cannot stand because there is in fact no resale. It is uncontroverted that the price of the meal is included in the price of the ticket. It is estimated that the price of the meal is actually about 1% of the cost of the ticket. To subdivide the cost of the ticket into percentages to cover the various services rendered by the airline in order to reach the artificial conclusion that there is a sale is to strain the meaning of the term "resale." When a passenger buys a ticket, he buys many services, including baggage handling, the services of flight attendants, and in appropriate cases, meals. In addition, a portion of his ticket goes to purchase gasoline and the services of the flight personnel. It is artificial to attempt to divide this package of services into separate sales and say that one of them is the sale of meals furnished to passengers.
*579 We acknowledge that some courts have reached a contrary conclusion on somewhat similar facts. See, e.g., Straughn v. Kelly Boat Service, Inc., 210 So.2d 266 (Fla. 1st DCA 1968); Undercofler v. Eastern Air Lines, Inc., 221 Ga. 824, 147 S.E.2d 436 (1966); and State v. Delta Air Lines, Inc., 356 So.2d 1205 (Ala. Civ. App. 1978). We conclude that the better view in this type of case is that expressed by the District Court of Appeal, First District, in Department of Revenue v. Kelly Boat Service, Inc., 324 So.2d 651 (Fla. 1st DCA 1975); Department of Revenue v. Pelican Ship Corporation, 257 So.2d 56 (Fla. 1st DCA 1972); and see Department of Revenue v. Hobbs, 368 So.2d 367 (Fla. 1st DCA 1979). See also Commonwealth v. United Airlines, Inc., 219 Va. 374, 248 S.E.2d 124 (1978); and American Airlines, Inc. v. Department of Revenue, 58 Ill.2d 251, 319 N.E.2d 28 (1974).
We believe that the reasoning of the Supreme Court of Florida in Gay v. Canada Dry Bottling Co. of Florida, 59 So.2d 788 (Fla. 1952), supports our conclusion on this point. In that case, the purchase in Florida of returnable bottles by a bottling company for the use of the company in distributing soft drinks to its customers was held to be a taxable sale of the bottles. This holding was against the contention of the company that its purchases of the bottles were for the purpose of re-sale to its customers because the cost of the bottles was included in the price of the sale of the soft drinks. Admittedly, that case would have been closer to our present factual situation if the bottles were nonreturnable, because then, as in our present case, the total product sold would have been used by the customer. But it appears from a careful consideration of that opinion that in the case of nonreturnable bottles, a tax would have been collected upon the sale to the customer.
The Airlines next argue that they are entitled to an exemption pursuant to Section 212.08(9), Florida Statutes (1977), because the meals constitute "parts" of the aircraft. In Klosters Rederi A/S v. State Department of Revenue, 348 So.2d 656 (Fla. 3d DCA 1977), this court did in fact hold that certain expendable ship supplies were entitled to a pro rata exemption as parts of the vessel on which they were loaded. We specifically excluded from that decision a holding or interpretation of the word "parts" and based our decision on the administrative rules of the Department which we held to apply in that case. We pointed out that without the aid of these rules we would have been hard-pressed to reach the conclusion we reached there. In the present case, the Department's regulations are clear and unambiguous and deny any exemption. We hold that to stretch the meaning of "parts" to include meals to be consumed on board would be both unreasonable and unwarranted in this case.
The last issue presented urges error in that Section 12A-1.64(6), Florida Administrative Code, which imposes the tax in this case, is unconstitutional because it creates an unreasonable classification in violation of the equal protection clause of the United States Constitution. We do not follow the reasoning advanced under this point by the Airlines, and we do not rule thereon because it is apparent that this point was never presented or urged in the trial court. See United Services Automobile Association v. Porras, 214 So.2d 749 (Fla. 3d DCA 1968).
After considering each of the points presented and finding no errors demonstrated, the order appealed is affirmed.
Affirmed.
SCHWARTZ, Judge (dissenting).
I disagree with the court's conclusion that the transactions involved in this case  the sales of the meals by the caterer to the airlines  are not exempt from sales tax as a non-retail "sale ... for resale ..." Sections 212.02(3)(a); 212.05, Florida Statutes (1975). In my judgment, the meals are in fact resold by the carrier to its passenger and the transaction between those two parties is properly viewed as a sale of two separate things: transportation and the meal. I have no difficulty, as does the majority, in distinguishing between those various "services" which go into furnishing the transportation, such as gasoline and *580 flight personnel; and the transfer directly to the passenger of a discrete item which he himself consumes. I hardly think, for example, that the passenger would be given a cash refund if any of the other "services" were not rendered, as he is if the airline fails to serve the meal.
Of the five jurisdictions which have considered the identical problem, three, including our neighboring states of Alabama and Georgia, have held as I would, that the caterer-airline transfer is not a taxable transaction. State v. Hertz Skycenter, Inc., 55 Ala.App. 481, 317 So.2d 319 (1975), affd., 294 Ala. 336, 317 So.2d 324 (1975); Undercofler v. Eastern Air Lines, Inc., 221 Ga. 824, 147 S.E.2d 436 (1966); United Airlines, Inc. v. Department of Treasury (Cir.Ct. Ingham Co., Mich., No. 13967-C), leave to appeal denied, 389 Mich. 781 (1973), discussed at length in State v. Hertz Skycenter, Inc., supra. I consider both that the facts in these cases are closer to the ones before us and that the reasoning upon which they are based is more persuasive than the contrary two decisions relied upon by the court, Commonwealth v. United Airlines, Inc., 219 Va. 374, 248 S.E.2d 124 (1978), and American Airlines, Inc. v. Department of Revenue, 58 Ill.2d 251, 319 N.E.2d 28 (1974).
The most helpful Florida case,[1]Gay v. Canada Dry Bottling Co. of Florida, Inc., 59 So.2d 788 (Fla. 1952) supports this conclusion. In that case, as the majority states, the purchase of returnable bottles by a soft-drink company from the glass manufacturer was held to be taxable. The supreme court carefully distinguished the case from a situation involving non-returnable containers, which is in turn, very closely analogous to our case; in the retail sale there is no breakdown in the gross price between the container and its contents as there is none between the transportation and the meal. At 59 So.2d 789, it is stated:
In considering the question of whether the purchase of various types of containers for use in `packaging tangible personal property for shipment or sale,' or similarly worded statutes, is a purchase `for resale,' it has been uniformly held that `non-returnable' or `expendable' containers, that is, those which are not returned to and re-used by the manufacturer of the product contained therein, are purchased for re-sale where the cost of such containers affects and adds to the price of the product. Lee v. Hector Supply Co., 133 Fla. 849, 183 So. 489 (vegetable crates) [omitting additional citations]
The purpose of exempting from a retail sales tax such intermediate sales of containers and packaging materials appears to be, as stated in Kroger Grocery & Baking Co. v. Glander, supra, [149 [Ohio] St. 120, 77 N.E.2d 921 926] `To avoid double taxation and to prevent the increase of ultimate sales price to the consumer, for, after all, the consumer pays the whole tax reflected in the price which he pays for the finished product.'
Thus, the majority is correct in its analysis of the Gay opinion as indicating "that in the case of non-returnable bottles, a tax would have been collected upon the sale to the customer."[2] To me, however, this conclusion *581 compels the determination that the initial sale to the airlines in the case at bar is not taxable. I confess myself unable to follow the court's reasoning in finding support in Gay for its contrary result.
I would reverse.
NOTES
[1] The other Florida decisions cited by the court, Department of Revenue v. Hobbs, 368 So.2d 367 (Fla. 1st DCA 1979); Department of Revenue v. Kelly Boat Service, Inc., 324 So.2d 651 (Fla. 1st DCA 1975), cert. denied, 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); Department of Revenue v. Pelican Ship Corp., 257 So.2d 56 (Fla. 1st DCA 1972), cert. denied, 262 So.2d 682 (Fla. 1972), cert. dism., 287 So.2d 93 (Fla. 1974); and Straughn v. Kelly Boat Service, Inc., 210 So.2d 266 (Fla. 1st DCA 1968), deal with the quite different question of where admitted sales between charter boats and their customers (analogous to the subsequent carrier-passenger transaction involved here) were properly deemed to have occurred. They thus assume the point which is in issue in this case.
[2] It should be emphasized that we are concerned in the present case only with whether the meals in question are "resold" to the passengers, and not with the problems of when or how that resale takes place. See note 1, supra. Thus, I do not reach the question of whether the meal is resold when the ticket is purchased, as held by the Georgia court in the Undercofler case, supra, or when the meal is served. Cf. State v. Delta Air Lines, 356 So.2d 1205 (Ala. App. 1978), cert. denied, 356 So.2d 1208 (Ala. 1978). Nor do I consider whether, in either event, the resale is itself exempt from taxation on the ground that the meals, all of which are served in international airspace, are not used or consumed "in this state." §§ 212.06(1)(a), (2)(c), (3), Fla. Stat. (1977). Compare Straughn v. Kelly Boat Service, Inc., supra, with Department of Revenue v. Pelican Ship Corp., supra.